UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

MICHAEL J. CAMPOS,

    Plaintiff,

v.

TOWN OF PAHRUMP,

    Defendant.

Case No. 2:13-cv-00218-RFB-GWF

ORDER

Defendant's Motion for Summary Judgment, ECF No. 39

## I. INTRODUCTION

This case arises out of various actions by Defendant against Plaintiff, who was previously employed by Pahrump Valley Fire Rescue Services ("PVFRS") as a Firefighter/Emergency Medical Technician-Intermediate. Plaintiff alleges four causes of action: 1) Discrimination under the Americans with Disabilities Act ("ADA") and N.R.S. 613.330; 2) Retaliation under the ADA and N.R.S. 613.330; 3) Wrongful Termination; and 4) Invasion of Privacy. For the reasons stated below, the Court GRANTS Defendant's Motion for Summary Judgment (ECF No. 39).

## II. BACKGROUND

This case was removed on February 7, 2013. ECF No. 1. Early Neutral Evaluation was conducted on May 1, 2013. ECF No. 21. The case did not settle as to Town of Pahrump, the remaining defendant. On March 17, 2014, Defendant filed a Motion for Summary Judgment. ECF No. 39. On March 14, 2016, the Court held a hearing as to Defendant's Motion for Summary Judgment.

## III. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011).

Where the party seeking summary judgment does not have the ultimate burden of persuasion at trial, it "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its [initial] burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id. If the movant has carried its initial burden, "the nonmoving party must produce evidence to support its claim or defense." Id. at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). However, the ultimate burden of persuasion on a motion for summary judgment rests with the moving party, who must convince the court that no genuine issue of material fact exists. Nissan Fire, 210 F.3d at 1102.

### IV. UNDISPUTED FACTS

The Court incorporates its findings of undisputed facts articulated during the hearing on March 14, 2016, but highlights the following crucial undisputed facts here. Campos worked for Town of Pahrump ("Pahrump") as a Fire Fighter/EMT-Intermediate (EMT-I) from March 2006 until October 10, 2010. On September 5, 2010 Campos and his coworker responded to an emergency call at Terrible's Hotel and Casino. After Campos brought the patient to the Emergency Room, the patient died while in the ER.

Following the September 5th incident, Lieutenant Smith engaged in an investigation

beginning the next day, on September 6, 2010. She memorialized her "investigative findings report" on September 8, 2010. As a result of her investigation, Lt. Smith determined that Mr. Campos violated PVFRS protocol and approved procedures. In addition, she determined that Mr. Campos violated Nevada Administrative Code Sections ("NAC") 450B.384, and 450B.385, authorized practices for EMT's and EMT-Intermediates.

On September 10, 2010 Lt. Smith met with Campos. Campos told her about physical issues regarding his throat and neck, and she shared that information with Chief Lewis. On September 14, 2010, Plaintiff was placed on paid administrative leave. A final determination regarding the September 5th incident was made in the Final Investigation Report dated September 16, 2010. On that same day, Campos sent Fire Chief Scott Lewis and Human Resources Coordinator Terry Bostwick his worker's compensation claim.

On September 23, 2010 Chief Lewis notified Campos of pending disciplinary action. On September 30, 2010 Campos, his Union Representative Chris Van Leuven, Chief Lewis and Terry Bostwick met for a pre-disciplinary hearing. On October 4, 2010 Chief Lewis terminated Campos effective October 8, 2010.

Mr. Campos grieved this termination. However, on November 8, 2010 Town Manager Bill Kohbarger denied this grievance. The termination was moved to arbitration. Simultaneously, the Union was involved in discussions with Town Manager Kohbarger and discussed the possibility of Plaintiff's return to work on a Last Chance Agreement.

Several months after his termination, on April 12, 2011, Defendant offered Plaintiff the opportunity to return to work under the terms of the Last Chance Agreement ("LCA") at a meeting. Plaintiff signed the LCA that day. Present at the meeting were Pahrump Town Manager Bill Kohbarger, Human Resources Director Terry Bostwick, Fire Chief Lewis, Union President Tim Murray and Campos. Campos agreed, among other things, to return to work as soon as practical and to be placed on an 18-month probation. He also agreed that the LCA was a full settlement and release of any and all claims pertaining to that termination and grievance. At the meeting, Mr. Kohbarger inquired as to when Plaintiff would be able to return to work. Campos stated that he was able to return to full duty right away, and in fact, provided a doctor's note confirming that

status. Plaintiff returned to work immediately after the LCA was signed.

On April 18, 2011, a few days after his reinstatement, Mr. Campos filed an EEOC complaint regarding his first termination. Pahrump received a copy of Campos' Charge of Discrimination on or around April 24, 2011.

On approximately August 18, 2011, Chief Lewis received notice of a call to Nye County dispatch related to a citizen complaint. The complaint stated that a verbal altercation between two firefighters, including Campos, had taken place by a park in front of several families. Chief Lewis conducted an investigation. In the investigation, Campos and the other firefighter confirmed that the altercation took place and that foul language was used. Chief Lewis determined that both firefighters violated PVFRS rules and regulations, and that Plaintiff violated his LCA.

Pahrump's H.R. Director Terry Bostwick submitted Campos's second termination paperwork on August 30, 2011. Kohbarger signed this paperwork on August 31, 2011. Chief Lewis told Campos he was terminated effective September 2, 2011.

**V.      DISCUSSION**

**A.  Accord and Satisfaction, and Release**

**1.  Legal Standard**

An accord is an agreement whereby one of the parties undertakes to give or perform, and the other party accepts, in satisfaction of a claim, something other than or different from what he or she is, or considers himself or herself to be entitled to. <u>Morris DeLee Family Trust v. Cost Reduction Engineering, Inc.</u>, 705 P.2d 161 (Nev. 1985). An accord and satisfaction requires a meeting of the minds of the parties on the terms of the agreement. <u>Id</u>.

The Nevada Supreme Court has granted summary judgment where accord and satisfaction are met. <u>See</u> <u>Sims v. Veneman</u>, 580 P.2d 466, 466 (Nev. 1978) ("the undisputed facts are that counsel for the parties negotiated a settlement of appellant's claim; respondents tendered a draft to appellant in the amount of $4,500; the draft, in plain and unambiguous terms, described the nature of payment as being 'In Full and Final Settlement of All Claims'; and, appellant endorsed the draft and expended a portion of the proceeds. These facts establish an accord and satisfaction, as a matter of law, thereby settling appellant's claim.").

"The law of Nevada requires that the party availing himself of a plea of accord and satisfaction must bear the burden of proof and must establish clearly that there was a meeting of the minds of the parties, accompanied by a sufficient consideration." Pierce Lathing Co. v. ISEC, Inc., 956 P.2d 93, 96-97 (Nev. 1998).

In addition, Nevada recognizes and effectuates release clauses. "Because settlement agreements are contracts, they are governed by principles of contract law. Under contract law generally, when a release is unambiguous, we must construe it from the language contained within it. Our ultimate goal is to effectuate the contracting parties' intent, however, when that intent is not clearly expressed in the contractual language, we may also consider the circumstances surrounding the agreement. Typically, contractual release terms ... do not apply to future causes of action unless expressly contracted for by the parties." In re Amerco Derivative Litig., 252 P.3d 681, 693 (Nev. 2011) (internal citations and quotations omitted).

### 2. Application

Defendant argues that under the doctrine of "accord and satisfaction," Mr. Campos is estopped from bringing all of his claims because he executed a prior release. The Court finds that, in the LCA, Campos agreed to the following terms: "Michael Campos and I.A.F.F. also hereby agree that this is a full settlement and release of any and all claims pertaining to the termination of Mr. Campos and the grievance filed by I.A.F.F. Local 4068." MSJ, Ex. 18. The Court finds that the LCA between the Town, the union and Mr. Campos was entered into after a meeting of the parties and the complete review of each of the terms of the agreement. Campos was represented at the LCA meeting by I.A.F.F. Local 4068. Campos fully participated in the meeting and stated repeatedly that he agreed to the terms of the LCA. At the meeting, Campos fully accepted responsibility for his conduct which resulted in his termination. Campos affirmatively stated that he was not intimidated or coerced in any way to sign the LCA. The terms of the agreement were clearly set forth, one of which was that Mr. Campos would be returned to duty. And, if Plaintiff disputed the enforceability of the LCA, he could have filed a complaint with the Employee Management Relations Board. He did not file such a complaint.

The Court disagrees with Defendant that the release clause in the LCA would bar all of

Plaintiff's claims. The release, executed on April 12, 2011, clearly states that "Michael Campos and I.A.F.F. also hereby agree that this is a full settlement and release of any and all claims pertaining to the [October 5, 2010] termination of Mr. Campos and the grievance filed by I.A.F.F. Local 4068." Therefore, the plain language of the release indicates that it applies only to the first, and not second, termination.

Plaintiff does not directly address the argument of "accord and satisfaction" in his Opposition. However, pursuant to the March 14th hearing, the Court understands Plaintiff's position to be that the LCA itself should be invalidated in its entirety because 1) it was coercive in its terms and in the way it was obtained and 2) improperly waived Plaintiff's statutory and constitutional rights. Plaintiff argues the LCA was coercive because Pahrump "ambushed" Campos with the LCA the day of the LCA meeting. Plaintiff further argues Kohbarger "illegally questioned" Campos about his health and expressly conditioned Campos's reemployment on satisfactory answers from Campos regarding his health, in violation of Pahrump's EEO policies and federal anti-discrimination law. Plaintiff argues the LCA improperly waived his rights because the LCA forced Campos to waive his Union, collective bargaining, and due process rights. Reviewing the record, the Court does not find that the LCA was coercive or improperly waived Plaintiff's rights.

First, the Court does not find that the LCA was coercive in its terms or in the way it was obtained based on the undisputed facts in this case. The language of the release is clear and unambiguous. Additionally, communications between the parties leading up to the LCA Meeting, and the minutes of the meeting itself, do not indicate that Plaintiff was coerced, or that Plaintiff believed he was coerced. Plaintiff was put on notice of the LCA Meeting as early as April 6, 2011, approximately one week before the meeting was held. MSJ, Ex. 16 at 3. At the meeting itself, Plaintiff was represented by the Union and appeared fully prepared to discuss his reinstatement. Plaintiff took full responsibility for the September 5th incident; confirmed his doctor's note stating he was "100% ready to return to work"; stated he had no additional medical issues; and represented that he had no lingering throat or neck issues. MSJ, Ex. 19, 3-4. While Plaintiff argues that the Town's questions concerning Plaintiff's health were invasive and improper, the Court finds that

Campos put his health at issue when he filed his worker's compensation claim, and that he voluntarily provided the doctor's note indicating his health to his Union—which was then produced at the meeting—in response to an inquiry about when he could resume work. Last, the Court finds that questions regarding Plaintiff's health were appropriate where his physical ability to return to work was a crucial part of his reinstatement, as well as directly related to his ability to perform the duties of an EMT-Intermediate.

The Court further finds that the Town produced the one-page LCA and gave Plaintiff sufficient time to read it and ask questions. In discussing the LCA terms, the Town specifically stated that Plaintiff would be placed on probation as a term of his reinstatement, and asked whether Plaintiff understood what probation meant. Plaintiff said yes and in his own words, stated "[t]hat if I do anything wrong I can be let go at any time…without representation from the [Union] people." At no point during the meeting did Plaintiff indicate concern about the terms of the LCA.

The Court also rejects Plaintiff's last argument, that the LCA improperly waived his rights under the CBA and due process. At the hearing on March 14, 2016, the Plaintiff conceded that one may waive existing statutory and constitutional rights. While Plaintiff attempts to cast these waivers as prospective rights, the Court does not find the release to pertain to future rights. Rather, Plaintiff knowingly waived his existing rights to challenge his October 2010 termination. To the extent that Plaintiff relies on the Ninth Circuit's decision in Walls v. Contra Costa, 653 F.3d 963 (9th Cir. 2011), the Court finds this case distinguishable. Namely, Walls discusses whether, in signing an LCA, the plaintiff waived his right to a pre-termination hearing, and is not applicable here, where at the time of the LCA, Campos had been terminated and grieved his termination. See id. at 969-70. at Additionally, Campos does not allege a due process violation.

The Court finds that the release contained in the LCA precludes Plaintiff from his present claims relating to his first termination. The Court finds that the LCA was a valid and binding agreement that Plaintiff voluntarily entered into. The Court further finds that there was a meeting of the minds at the LCA Meeting, and that there was consideration for the agreement, as Plaintiff was reinstated as an EMT as a result of the LCA. Given the unambiguous language of the release, the Court finds it must give the LCA release-clause effect. Plaintiff is therefore barred from

bringing claims pertaining to his first termination in October 2010.

The Court now turns to discussion of his remaining claims for his second termination.

### B. Discrimination claim under the ADA and NRS

#### 1. Legal Standard

To establish a prima facie case under the Americans with Disabilities Act ("ADA"), a plaintiff must first demonstrate that: "(1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of his disability." Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233, 1237 (9th Cir. 2012) (citing Allen v. Pac. Bell, 348 F.3d 1113, 1114 (9th Cir. 2003). The causal standard for liability for disability discrimination under the ADA is the "motivating factor" standard, and it prohibits adverse employment decisions that are motivated by animus based upon the employee's disability. See Head v. Glacier Nw. Inc., 413 F.3d 1053, 1065 (9th Cir. 2005).

Once the Plaintiff has met its burden of making out a prima facie case of retaliation, the burden shifts to the Defendant to articulate a legitimate, non-retaliatory reason for its action. See Porter v. Cal. Dep't of Corr., 419 F.3d 885, 894 (9th Cir. 2005); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Once the defendant has presented a purpose for the action, the plaintiff bears the ultimate burden of providing evidence that the defendant's reason is "merely a pretext for a retaliatory motive." See Porter, 419 F.3d at 894; McDonnell Douglas, 411 U.S. at 804. A plaintiff may demonstrate a defendant's reason is pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003) (internal quotations and citations omitted). "To make this showing of pretext, [a plaintiff] may rely on the evidence proffered in support of his prima facie case. A factfinder may infer the ultimate fact of retaliation without proof of a discriminatory reason if it rejects a proffered nondiscriminatory reason as unbelievable." Id. (internal citations omitted).

Nevada courts apply the ADA approach to Plaintiff's state law claims. The Supreme Court

of Nevada has held that "[i]n light of the similarity between Title VII of the 1964 Civil Rights Act and Nevada's anti-discrimination statutes, we have previously looked to the federal courts for guidance in discrimination cases." Pope v. Motel 6, 114 P.3d 277, 280 (Nev. 2005).

### 2. Application

While the Defendant does not concede that Campos was disabled or qualified, the Defendant argues Plaintiff cannot establish a prima facie case for discrimination because he cannot show that he suffered adverse employment action *because of* any disability. Namely, because the Plaintiff was fit for duty as of the LCA Meeting, and the only indication he was disabled was a prior worker's compensation claim filed September 16, 2010, Plaintiff cannot establish that he was terminated in September 2011 because of his alleged disability. Even if Plaintiff can establish a prima facie case of discrimination, Defendant argues that it can provide a legitimate, non-discriminatory reason for his termination: the violation of the LCA on August 17, 2011.

Plaintiff argues the proffered basis for his second termination is pretextual, and that he was terminated because of his disability. Plaintiff argues that the Defendant's reaction—specifically, Town Manager Kohbarger's—upon learning that Campos had filed an EEOC charge relating to his initial termination after he was reinstated, proves he was fired because he was disabled. Plaintiff also appears to argue that the health-related questions asked during the LCA Meeting, and the LCA itself, further demonstrate the causal connection between Plaintiff's disability and his termination roughly five months later.

The Court does not find that Kohbarger's disappointment and frustration upon learning that Plaintiff filed an EEOC claim relating to his first termination in April 2011, contrary to the release-clause in the LCA, creates a disputed fact that Plaintiff was fired because of his disability five months later. Relatedly, the Court is unpersuaded that the health-related questions asked during the LCA Meeting establishes a disputed fact as to Plaintiff's termination. On the contrary, the Court finds that these questions belie Plaintiff's discrimination claim; Defendant asked for confirmation that Plaintiff was healthy and fit for duty, to which Campos replied in the affirmative, and even voluntarily provided medical documentation to support this. Defendant than reinstated Campos. The Court does not find that these facts bolster Plaintiff's argument that, despite

obtaining assurances that the Plaintiff was healthy at the time of his reinstatement, Defendant nonetheless terminated Plaintiff later because of a disability, particularly where there were no intervening events related to Plaintiff's alleged disability between the time of his reinstatement and second termination. Plaintiff can point to no disputed facts creating a possibility that he was terminated based upon Defendant's belief that he had a disability.

Last, the Court is unpersuaded that, by challenging the validity of the LCA itself, Plaintiff has satisfied his burden of demonstrating that the reason behind his second termination is his disability. Rather, Plaintiff appears to argue that, because the LCA itself is void against public policy, the Court should infer that he was fired because of a disability. As the Court has not found the LCA to be void, the Court will not make this inference.

In conclusion, the Court finds that Plaintiff has failed to demonstrate that there are disputed facts indicating that his disability, rather than an LCA violation, was the basis for his second termination. Therefore, the Court GRANTS Defendant summary judgment as to Plaintiff's discrimination claims.

### C. Retaliation under the ADA and N.R.S. 613.330

#### 1. Legal Standard

"Under the ADA, 42 U.S.C. § 12203(a), the anti-retaliation provision, provides: No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." Alvarado v. Cajun Operating Co., 588 F.3d 1261, 1264 (9th Cir. 2009). As previously stated, "[t]o establish a prima facie case of retaliation under the ADA, an employee must show that: (1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two. If the employee establishes a prima facie case, the employee will avoid summary judgment unless the employer offers legitimate reasons for the adverse employment action, whereupon the burden shifts back to the employee to demonstrate a triable issue of fact as to whether such reasons are pretextual." Pardi v. Kaiser Found. Hosps., 389 F.3d 840, 849 (9th Cir. 2004). Only equitable relief is available for retaliation claims. "ADA retaliation

claims are redressable only by equitable relief, no jury trial is available…[We] hold that punitive and compensatory damages are not available for ADA retaliation claims." Alvarado v. Cajun Operating Co., 588 F.3d 1261, 1270 (9th Cir. 2009).

In Nevada, "NRS 613.340(1) states: It is an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by NRS 613.310 to 613.435, inclusive, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under NRS 613.310 to 613.435, inclusive." Pope v. Motel 6, 114 P.3d 277, 281 (Nev. 2005). The Nevada Supreme Court has found that Nevada's anti-retaliation statute tracks Title VII under federal law. See Pope v. Motel 6, 114 P.3d 277, 281 (Nev. 2005). Under Title VII, the same framework applies as with the ADA, but the causal link required is but-for causation. See Univ. of Texas Southwestern Med. Ctr. V. Nassar, 133 S.Ct. 2517, 2533 (2013) ("This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.").

### 2. Application

Defendant argues that Campos' claims for retaliation in violation of the ADA and NRS 613.330 must fail because his termination was not a result of his EEOC complaint. Defendant cites to the "but for" requirement under the Title VII claims, and argues Plaintiff cannot satisfy this causation requirement. Therefore, because Plaintiff cannot demonstrate that the sole basis for his first and second terminations was his disability for the reasons articulated above, he cannot make a prima facie case for retaliation under the ADA.

While the Court agrees that this standard most likely applies to Plaintiff's retaliation claim under NRS 613.330, post-Nassar, neither the Supreme Court nor the Ninth Circuit has adopted the "but for" causation standard to ADA claims. Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2524 (2013). However, the Court finds it need not determine whether but-for causation applies here for the reasons stated below.

First, in his Opposition, Plaintiff does not respond to Defendants' arguments regarding Plaintiff's retaliation claim and does not make out a prima facie case for retaliation under the ADA

or NRS. Rather, his single reference to retaliation in his Opposition is in reference to his wrongful termination claim. Second, while at the March 14, 2016 hearing the Plaintiff claims to be asking for reinstatement, in his Complaint, he asks for compensatory and punitive damages. The Ninth Circuit, however, has clearly held that only equitable relief is available for these claims. See Alvarado, 588 F.3d at 1270.

Regardless, the Court does not find that Plaintiff has met his burden in establishing a retaliation claim under either the ADA or the Nevada law equivalent. Plaintiff cannot point to disputed or undisputed facts that demonstrate that he was terminated in September 2011 because he filed an EEOC complaint five months earlier, related not directly to his disability but to his first termination. See Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (finding that "cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'" and citing a Circuit Court case where a three month period is insufficient).

The Court therefore GRANTS Defendants summary judgment as to Plaintiff's retaliation claims.

### D. Wrongful Termination

#### 1. Legal Standard

"[R]etaliatory discharge by an employer stemming from the filing of a workmen's compensation claim by an injured employee is actionable in tort." Hansen v. Harrah's, 675 P.2d 394, 397 (Nev. 1984). "To support a claim of tortious discharge, the evidence produced by the employee must be concrete and establish outrageous conduct that violates public policy…An employee's statements that are conjecture or speculation cannot support a claim of tortious discharge." State v. Eighth Judicial Dist. Court ex rel. Cty. of Clark, 42 P.3d 233, 240-41 (Nev. 2002). "[R]ecovery for retaliatory discharge under state law may not be had upon a 'mixed motives' theory; thus, a plaintiff must demonstrate that his protected conduct was *the* proximate cause of his discharge… the use of the 'mixed motives' concept in the context of wrongful termination cases would have the effect of undermining the Nevada legislature's intent in creating

the 'at-will' doctrine." Allum v. Valley Bank of Nevada, 970 P.2d 1062, 1066 (Nev. 1998) (emphasis in the original). Finally, "[w]hen there is 'mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality ... the temporal proximity must be 'very close.' Courts have held that a three-month period and a four-month period were too far apart in temporal proximity to support a claim for tortious discharge." Hardy v. Chromy, 126 Nev. 718 (Nev. 2010).

As with the retaliation claim, Defendant again argues that Campos' second termination was not wrongful because it was not in retaliation for filing an EEOC Complaint but rather because of his violation of his LCA, and was therefore not wrongful and in violation of public policy. In response, Plaintiff again argues that he was terminated the second time because he was a "whistleblower," evidenced by Kohbarger's reaction upon learning about his EEOC complaint. Plaintiff also argues he was terminated on August 31, not September 2, because it saved Defendant health benefit costs for the following month. To this point, Defendant argues that this is pure speculation and that, even if this were a motivating factor, it does not demonstrate his second termination was the result of engaging in protected activity.

For the reasons stated previously, the Court is unpersuaded by Plaintiff's argument that his EEOC Complaint filed in April and his subsequent termination in September establishes a disputed fact as to the motivation for his alleged wrongful termination. The Court is unpersuaded by Plaintiff's argument that his termination on August 31 rather than September 2 demonstrates that his termination was wrongful, and the Court is unaware of any precedent that suggests that an employer's decision of when to terminate an employee—at the end, rather than the beginning, of a month—is an example of wrongful termination. The Court does not find that there is a disputed fact as to the wrongfulness of Plaintiff's termination. Therefore the Court GRANTS Defendant's motion regarding wrongful termination.

### E. Invasion of Privacy

#### 1. Legal Standard

"In order for an individual to bring a claim for invasion of privacy based on intrusion upon seclusion, the individual must show: '1) an intentional intrusion (physical or otherwise); 2) on the

solitude or seclusion of another; 3) that would be highly offensive to a reasonable person.'" <u>Iorio v. Check City P'ship, LLC</u>, No. 64180, 2015 WL 3489309, at *3 (Nev. May 29, 2015). "[A] plaintiff must show that he or she had an actual expectation of seclusion or solitude and that that expectation was objectively reasonable." <u>People for Ethical Treatment of Animals v. Bobby Berosini, Ltd.</u>, 895 P.2d 1269, 1279 (Nev. 1995) holding modified by <u>City of Las Vegas Downtown Redevelopment Agency v. Hecht</u>, 940 P.2d 127 (Nev. 1997) holding modified by <u>City of Las Vegas Downtown Redevelopment Agency v. Hecht</u>, 940 P.2d 134 (Nev. 1997). "A court considering whether a particular action is 'highly offensive' should consider the following factors: the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." <u>PETA</u>, 895 P.2d at 1282 (internal citations omitted).

### 2. Application

In its Motion, Defendant argues that Mr. Campos did not suffer an invasion of privacy; that the patients' rights statute, NRS 449.720, is inapplicable and affords Mr. Campos no protection that the Town is not a covered entity subject to the HIPAA privacy rules; and that there is no private right of action under HIPAA.

In his Opposition, Campos only argues his right to privacy under Nevada common law. Therefore the Court addresses only this argument. Plaintiff argues that the questions asked during the LCA agreement regarding Plaintiff's health and conditioning Plaintiff's return on his heath are highly offensive.

Defendant replies that, based on the context of the LCA conversation—in which Plaintiff was previously terminated and was being potentially reinstated as a firefighter—the degree of intrusion was minimal. Campos had already shared information about his return to work with the Union and would necessarily be required to share that information with his employer, as fitness for duty is a necessary component of the firefighter position. The Court agrees.

The Court finds that, because Plaintiff had voluntarily disclosed his throat and neck problems previously to Lt. Smith on September 10, 2010, through a worker's compensation claim submitted on September 16, 2010, and at the LCA Meeting where he produced a doctor's note

indicating he was fit for duty, Plaintiff did not have an actual and reasonable expectation of seclusion or privacy. See PETA, 895 P.2d at 1279 ("[A] plaintiff must show that he or she had an actual expectation of seclusion or solitude and that that expectation was objectively reasonable."). Additionally, considering the context of the conversation, the Court does not find Defendant's questioning of Plaintiff regarding his health in the context of Plaintiff's returning to work as a firefighter to be highly offensive to a reasonable person. See PETA, 895 P.2d at 1282. Therefore, the Court GRANTS Defendant's motion as to Plaintiff's invasion of privacy claim.

### VI. CONCLUSION

Therefore, the Court GRANTS Defendant's Motion for Summary Judgment. ECF No. 39.

DATED: August 10, 2017.

RICHARD F. BOULWARE, II
United States District Judge